[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14504
Non-Argument Calendar
_____

D. C. Docket No. 1:11-cv-04044-JOF


LABMD, INC.,

                                                                                                  Plaintiff-Appellant,

versus

TIVERSA, INC.,
a Pennsylvania Corporation,
TRUSTEES OF DARTMOUTH COLLEGE,
M. ERIC JOHNSON,

                                                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
For the Northern District of Georgia
_____

(February 5, 2013)

Before CARNES, BARKETT, and EDMONDSON, Circuit Judges.

PER CURIAM:

LabMD, Inc., a Georgia corporation, appeals the dismissal of its diversity lawsuit for lack of personal jurisdiction over Defendants Tiversa, Inc. (a Pennsylvania corporation), Trustees of Dartmouth College (a New Hampshire college), and M. Eric Johnson (a New Hampshire resident). No reversible error has been shown; we affirm.

LabMD's complaint arose out of an article written by Johnson -- a Dartmouth professor -- entitled "Data Hemorrhages in the Health-Care Sector." Johnson worked in collaboration with Tiversa, a company that monitors global peer-to-peer network searches and provides peer-to-peer intelligence and security services.[1] In preparing the article, Johnson and Tiversa searched peer-to-peer networks looking for computer files containing data that could be used potentially to commit medical or financial identity theft. As part of their search, Johnson and Tiversa found a 1,718-page document that contained patient social security numbers, insurance information, and treatment codes (the "1,718 File"). LabMD

---

[1] Peer-to-peer networks allow users to place shared computer files in folders that are open for other users to search via the internet.

2

alleges that the 1,718 File was created and stored on a LabMD computer and was the personal property of LabMD.

Tiversa later called LabMD to notify LabMD that it had discovered the 1,718 File. That same day, Tiversa sent LabMD three emails following up on the phone call and offering its intelligence and security services to LabMD. Over the next two months, Tiversa sent six more emails soliciting business from LabMD.

LabMD filed this lawsuit against Defendants in the Superior Court of Fulton County, Georgia, asserting claims for trespass, conversion, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-90. Defendants removed the case to the District Court for the Northern District of Georgia. The district court later granted Defendants' motions to dismiss, concluding that it lacked personal jurisdiction over Defendants under Georgia's long-arm statute, O.C.G.A. § 9-10-91.

We review de novo a district court's dismissal of a complaint for lack of personal jurisdiction. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).

To determine whether personal jurisdiction exists over a nonresident defendant, we must decide whether the exercise of jurisdiction is appropriate under the state's long-arm statute.

Georgia's long-arm statute provides that Georgia courts may exercise personal jurisdiction over a nonresident defendant if, among other things, the nonresident "(2) [c]ommits a tortious act or omission within [Georgia]" or "(3) [c]ommits a tortious injury in [Georgia] caused by an act or omission outside [Georgia] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]." O.C.G.A. § 9-10-91(2), (3). We interpret and apply Georgia's long-arm statute "in the same way as would the Georgia Supreme Court." Diamond Crystal Brands, Inc., 593 F.3d at 1258.

LabMD contends that Defendants are subject to personal jurisdiction under subsection (2) of Georgia's long-arm statute because Defendants used peer-to-peer software to open a Transmission Control Protocol/Internet Protocol port on a LabMD computer that was located physically in Georgia. Because Defendants caused a port to open on the Georgia computer being searched, LabMD contends that Defendants' tortious act took place in Georgia even though Defendants were outside Georgia when they searched for and downloaded the 1,718 File.

For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that -- when a defendant uses the telephone or email to contact a Georgia resident -- defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email.  See Anderson v. Deas, 279 Ga. App. 892, 893-94 (Ga. Ct. App. 2006) (no personal jurisdiction existed over a defendant who made harassing telephone calls to a Georgia resident from another state); Huggins v. Boyd, 304 Ga. App. 563, 565 (Ga. Ct. App. 2010) (concluding -- based on Anderson -- that no personal jurisdiction existed over a nonresident defendant who emailed Georgia residents).

For the long-arm statute, we see no meaningful distinction between the technology used to place telephone calls or send emails and the technology used in peer-to-peer file sharing.  In all cases, the technology causes the transmission of information along telephone or electronic lines between an out-of-state defendant and a Georgia resident.  See Anderson, 279 Ga. App. at 893-94; Huggins, 304 Ga. App. at 565.  That peer-to-peer software causes a port to open on another computer is not unique: telephone calls also require a connection to the receiving phone line before the transmission of information can occur.  The conduct giving rise to Defendants' alleged offense occurred where Johnson and Tiversa used computers to access the 1,718 File.  Because Johnson and Tiversa used computers outside of Georgia, Defendants are not subject to personal jurisdiction under subsection (2).

LabMD also contends that Defendants are subject to personal jurisdiction under subsection (3) of Georgia's long-arm statute. LabMD argues that Tiversa "regularly solicited business" in Georgia because, over the course of two months, Tiversa made one phone call to LabMD once and sent nine emails offering Tiversa's services.[2]

Georgia's long-arm statute "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." Gust v. Flint, 257 Ga. 129, 130 (Ga. 1987). In determining whether a nonresident defendant may be subject to personal jurisdiction under subsection (3), Georgia courts consider many factors including -- but not limited to -- whether a defendant (1) regularly does business or solicits business within Georgia; (2) engages in a persistent course of conduct within Georgia; (3) derives substantial revenue from services rendered within Georgia; (4) has employees located within Georgia; or (5) is authorized to do business in Georgia. Id. at 129 (no personal jurisdiction existed over nonresident defendant who advertised in a trade paper, negotiated a sale over the phone, and accepted a deposit check from a Georgia resident); ETS Payphone v. TK Indus., 236 Ga. App. 713, 715-16 (Ga. Ct. App. 1999) (no personal jurisdiction existed over nonresident defendant who

---

[2] LabMD also argues that, as co-conspirators, Johnson and Dartmouth are subject to personal jurisdiction to the same extent as Tiversa. Because no personal jurisdiction exists over Tiversa, LabMD cannot show that Johnson or Dartmouth are subject to personal jurisdiction under subsection (3).

visited Georgia once and negotiated a contract via telephone, mail, and fax).  Other factors weighing against a finding of personal jurisdiction are when a defendant's contact with Georgia is limited to a single business transaction and when that transaction is conducted via telephone.  See Gust, 257 Ga. at 129.

Tiversa is not registered to do business in Georgia, has no employees or customers in Georgia, derives no revenue from business activities in Georgia, owns no Georgia property, and pays no Georgia taxes.  Tiversa's contact with Georgia consisted of one phone call and nine emails to LabMD.  Such contact is not enough under Georgia law to subject Tiversa to personal jurisdiction in Georgia courts.  See Gust, 257 Ga. at 130; ETS Payphone, 236 Ga. App. at 715-16.

LabMD also argues that personal jurisdiction exists over Tiversa because Tiversa maintains a website that is accessible to Georgia residents.  But Tiversa's website merely advertises Tiversa's services, does not offer products or services for purchase online, and does not target Georgia residents.  Thus, Tiversa's website does not subject Tiversa to personal jurisdiction in Georgia's courts.  See Smith v. Air Ambulance Network, 207 Ga. App. 75, 75 (Ga. Ct. App. 1993) (explaining that the "mere placement of advertisements in Georgia would be insufficient to authorize the exercise of personal jurisdiction" under Georgia's long-arm statute).  And, although Tiversa's business involves the global searching of computer

networks, this circumstance alone is also not enough to establish personal jurisdiction.

LabMD failed to demonstrate personal jurisdiction under Georgia's long-arm statute. We need not decide anything else in this case.

AFFIRMED.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 05, 2013

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  12-14504-AA
Case Style:  LabMD, Inc. v. Tiversa, Inc., et al
District Court Docket No:  1:11-cv-04044-JOF

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Eleanor M. Dixon, AA at (404) 335-6172.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Jeff R. Patch
Phone #:  404-335-6161

OPIN-1A Issuance of Opinion With Costs