IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LABMD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:11-cv-04044-LMM |
| TIVERSA, INC., TRUSTEES OF DARTMOUTH COLLEGE, and M. ERIC JOHNSON, | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
APPOINTMENT OF SPECIAL MASTER**

## I.   INTRODUCTION

Plaintiff LabMD, Inc. ("LabMD") was an Atlanta-based cancer detection facility until January 2014 when it closed its doors due to defendant Tiversa, Inc.'s ("Tiversa") lies and crimes.  This is not hyperbole.  The ordeal is well chronicled in reports from two branches of our federal government - a Congressional investigative report and a ruling by an FTC Administrative Law Judge.[1]

LabMD and Tiversa have litigated against one another in four (4) separate

_____

[1] Dkt. Nos. [33-3] and [33-4].

courts for the last five (5) years.[2]  The executive and legislative branches have

moved considerably faster than the judicial branch.  Why?  Because in the entire

time the parties have been in litigation, Tiversa has not answered a *single*

interrogatory, has not produced a *single* document and has not offered a *single*

witness for examination in *any* of those cases.  During those five years, Tiversa

and Boback have wasted the precious resources of federal and state courts by

manipulating the judicial system to avoid *any* discovery in *any* court.[3]  Tiversa has

now brought its dilatory and evasive tactics to Your Honor's court as revealed in

its recent failures to respond to the simplest and most fundamental questions about

---

[2] The four lawsuits are (1) this one ("*Georgia I*"), (2) *Tiversa Holding Corp. and Robert J. Boback v. LabMD, Inc., and Michael J. Daugherty*, in the United States District Court for the Western District of Pennsylvania, Civil Action No. 2:13-cv-01296 (the "Federal Defamation Action"), (3) *Tiversa Holding Corp. and Robert J. Boback v. LabMD, Inc., Michael J. Daugherty, Cause of Action Institute and Richard E. Wallace*, in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, GD-14-016497 (the "State Defamation Action") and (4) *LabMD, Inc. v. Tiversa Holding Corp., et al.*, in the United States District Court for the Western District of Pennsylvania, Civil Action No. 2:15-cv-00092. A fifth action captioned *LabMD, Inc., et al. v. Tiversa Holding Corp., et al.*, In the United States District Court for the Northern District of Georgia, Civil Action No. 1-16-cv-02480-LMM ("Georgia II") was filed on July 8, 2016.

[3] As an example of Tiversa and Boback's incessant efforts to delay all civil litigation, including cases *they* file against LabMD and its chief executive officer, the court in the State Defamation Action on September 2, 2016, granted Boback's motion to stay the case for the next four months – just after LabMD and Mr. Daugherty served their discovery requests on Tiversa and Boback.  Exhibit A to the attached Third Declaration of James W. Hawkins ("Hawkins Decl.") is a true and accurate copy of Judge Ward's order dated September 2, 2016.

the knowledge and participation of the key lawyer who helped Tiversa defraud this Court and the Eleventh Circuit.  It is time to bring these tactics to an end.

## II.   <u>STATEMENT OF FACTS</u>[4]

Many of the facts relating to this motion are contained in the Court's May 12, 2016 Order.[5]  New facts gathered by LabMD since that Order, as well as previously submitted facts particularly relevant to this motion, are discussed herein.  Several of these facts are identified as **red flags** to underscore the growing evidence regarding Tiversa attorneys' roles in the frauds on this Court.  Many of the red flags are adverse inferences drawn from Tiversa and Hansberry's refusals to answer questions.[6]

### A.   Background and Significance of LabMD's Opening Evidence of Kline's Representation of Tiversa and Participation in this Case.

Did Pepper Hamilton attorney Eric Kline represent Tiversa and participate in this case or not? Tiversa said yes.  But then it said no.  Now, it refuses to tell *why* it said yes or no.

The Court will recall LabMD's evidence that in July 2014, when Western

---

[4] For purposes of clarity and streamlining, and to put certain facts in the context of applicable law, LabMD includes some of its arguments and citation of authorities in this section.

[5] Dkt. No. [49].

[6] *See Dir. of Office of Thrift Supervision, US Dep't of Treasury v. Lopez*, 960 F.2d 958, 965 (11th Cir. 1992) (adverse inference may be drawn from refusal to answer questions).

District of Pennsylvania District Court Judge Fischer asked him to identify the

attorneys who represented Tiversa in *this* case, Jarrod Shaw, Tiversa's current

counsel, stated the following:

> MR. SHAW: Eric Kline, Your Honor, and John Hansberry represented
> Tiversa in the action that was filed against Tiversa by LabMD in the
> Northern District of Georgia.[7]

When LabMD submitted this *judicial admission*[8] as proof of Kline's role as

an officer of the court, Tiversa and Mr. Shaw responded with a self-contradictory

---

[7] Dkt. No. [33-5] at 2.   Unless otherwise noted, pinpoint cites are to the ECF generated numbers on the top left of each page.

[8] *See Roe v. City of Atlanta*, 456 F. App'x 820, 822 (11th Cir. 2012) ("We agree with Roe that the district court failed to give adequate consideration to the City's judicial admission."); *Gonzalez v. United States AG*, 368 F. App'x 963, 965 (11th Cir. 2010) ("The BIA has held that 'absent egregious circumstances, a distinct and formal admission made . . . during . . . a proceeding by an attorney, acting in [her] professional capacity, binds [her] client as a judicial admission.'") (citation omitted); *United States v. Watkins*, 120 F.3d 254, 255 (11th Cir. 1997) ("the government's judicial admission is enough to deprive the court of the authority to grant the Rule 41(e) motion"); *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 n.29 (11th Cir. 1983) ("We note that this judicial admission in a pleading is binding on Hunt, see *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir.1941)), *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 620-21 (11th Cir. 1983) ("…Ploof is bound by its judicial admission that the cause of action arose in Georgia…"); *Johnson v. Ambassador Pers. of Ala., Inc.*, 2014 U.S. Dist.  LEXIS 65467, at *8 (M.D. Ala. May 13, 2014) ("the court agrees that Plaintiff's proposed amendment is vague, unclear, unsupported by adequate allegations, and significantly contrary to Plaintiff's prior judicial admission that she resigned from her employment with Defendant."); *Enter. Nat'l Bank v. Jones (In re Jones)*, 197 B.R. 949, 956 (Bankr. M.D. Ga. 1996) (whether oral or written, any deliberate, clear and unequivocal statement made in the course of judicial proceedings qualifies as a judicial admission).

representation as noted by the Court: "Tiversa responds that Mr. Kline did not represent Tiversa in this case, and that Mr. Shaw misspoke when he stated as much in the Western District of Pennsylvania hearing."[9]   The Court, however, chose to reject Mr. Shaw's earlier statement in favor of his later statement:

> This exchange, *which Mr. Shaw contends was a misstatement*, does not amount to clear and convincing evidence that Mr. Kline represented Tiversa in this action or was otherwise an officer of this Court.[10]

Mr. Shaw's original admission was conclusive proof of Kline's role as an officer of the court in this case.   But the Court gave Tiversa and Mr. Shaw the benefit of the doubt.   In *Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir. 1994), the court commented on when and why it is appropriate for courts to defer to and believe the representations of counsel and when it is not:

> Every lawyer is an officer of the court.   And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal.   So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth.   We will not assume**--*unless given reason to do so*--**that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, *we will assume that* plaintiff's counsel best knows the value of his client's case and *that counsel is engaging in no deception*.

*Id*. at 1095 (emphasis added).   Regardless of whether Tiversa should be bound to Mr. Shaw's *judicial admission* in 2014, Mr. Shaw's recent refusal to answer

---

[9] Dkt. No. [49] at 12, citing Dkt. No. [41] at 46-47.
[10] Dkt. No. [49] at 13 (emphasis added).

fundamental questions about the source(s) of his *in judicio* statements should cause the Court to seriously question the accuracy, if not the integrity, of Mr. Shaw's self-contradictory representation here.[11]

### B. Hansberry's Refusal to Answer a Fundamental Interrogatory Creates An Adverse Inference that Kline Represented Tiversa and Participated in this Case.

Before further discussion about Mr. Shaw's refusal to answer questions about his inconsistent *in judicio* statements, a discussion about Pepper Hamilton attorney John Hansberry's refusal to answer one of the most ordinary interrogatories *ever* will put Mr. Shaw's recent refusals into further perspective.

The following is the first interrogatory directed to Hansberry on June 9, 2016:

> Identify each and every document you reviewed in order to provide full, complete, accurate and truthful responses to these interrogatories.[12]

On July 8, 2016, Hansberry responded to this interrogatory as follows:

---

[11] Tiversa *should* have provided the Court "exceptional circumstances" to set aside the judicial admission. *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("Once [a judicial admission is] made, the subject matter ought not to be reopened in the absence of a showing of exceptional circumstances, but a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission."). Tiversa provided *no* circumstances to justify its about face.

[12] Exhibit B to Hawkins Decl. is a true and accurate copy of LabMD's interrogatories to Hansberry.

OBJECTION: Respondent objects to this request to the extent it seeks information covered by the attorney-client privilege, the work product privilege or any other applicable privileges.

ANSWER: Subject to these objections, the answer is that in compliance with Rule 26(g), these responses are made to the best of my knowledge, information and belief formed after a reasonable inquiry.  I reviewed the documents filed in the United States District Court for the Northern District of Georgia and the Eleventh Circuit.  I also reviewed my files on this matter.[13]

Hansberry's overly broad characterization of the files he reviewed was suspicious.  Given the nature and context of the interrogatory, signs of another **red flag** were beginning to show.  As a consequence, in a July 19, 2016 letter to Hansberry, LabMD asked for supplementation:

In response to Interrogatory No. 1, you said you "reviewed the documents filed in the United States District Court for the Northern District of Georgia and the Eleventh Circuit" and "I also reviewed my files on this matter." You need to identify each and every document you reviewed.[14]

In a letter dated July 25, 2016, Hansberry responded to LabMD's request for supplementation as follows:

Interrogatory 1: My answer states that I reviewed documents filed with the Court, all of which are publicly available, and documents in my own file for

---

[13] Exhibit C to Hawkins Decl. is a true and accurate copy of Hansberry's responses to the interrogatories.

[14] Exhibit D to Hawkins Decl. is a true and accurate copy of the July 19, 2016 letter to Hansberry.

this litigation. I did not review any other documents. No additional response is required.[15]

The only *new* information provided in his July 25, 2016 response was that Hansberry "did not review any other documents" and that "No additional response is required."

Hansberry's evasiveness made this **red flag** even more apparent.  Thus, in a letter dated July 25, 2015, LabMD's counsel told Hansberry the following:

> In Interrogatory No. 1, you were asked to identify each and every document you reviewed in order to provide full, complete, accurate and truthful responses to the interrogatories.  In your initial response, you said, *inter alia*, that you reviewed your "files on this matter."  That answer is not responsive to the question, which is why I said in my July 19 letter that "[y]ou need to identify each and every document you reviewed."

> In your July 25 letter, you essentially repeated your earlier generalized statement that you reviewed documents in your own file for this litigation. You then state, inexplicably, that "[n]o additional response is required." Your answer to Interrogatory No. 1 remains incomplete. You need to identify all documents in your file that you reviewed. Please do so no later than Wednesday, July 27, 2016, or provide a specific explanation for your refusal to do so.[16]

On July 26, 2016, Hansberry responded as follows:

> I am writing in response to your letter of July 25, 2016.  I disagree with your assertion that I am required to identify every specific document that I reviewed in preparing my answers to the interrogatories.  The fact that I

---

[15] Exhibit E to Hawkins Decl. is a true and accurate copy of Hansberry's July 25, 2016 response.

[16] Exhibit F to Hawkins Decl. is a true and accurate copy of the July 25, 2016 letter to Hansberry.

reviewed a particular document does not mean that I obtained any information from that document which was pertinent to my answers, so identifying each such document would be a meaningless exercise and beyond the scope of discovery under the Federal Rules of Civil Procedure. Rather than declining to respond to the interrogatory, however, I identified two categories of documents that I reviewed. The first category consists of documents that you likely have already and that can be identified by reviewing the publicly-available docket in this action.  The second category – my file for this action – includes documents that also fit into in the first category.  In addition, it includes communications with the client, communications among Pepper Hamilton attorneys, and research into legal issues, all of which are protected from disclosure by the attorney-client privilege or the work product doctrine.[17]

The parties may quibble over the level of detail needed in Hansberry's response, but *level of detail* is not the point.  The point is that LabMD was zeroing in on discoverable information, Hansberry knew it and Hansberry was refusing to provide it.  Hansberry would only give overly broad answers and then claimed that any further detail would reveal attorney-client privileged and work product protected information.  To avoid further argument over the level of detail needed in Hansberry's responses, *and to avoid any issues regarding the protections asserted by Hansberry*, LabMD *substantially narrowed* its request for supplementation in an email on July 26, 2016:

> John - with respect to items in your file, the identi[t]y of the Pepper Hamilton attorneys and the specific "client" are not protected by the a/c privilege or the work product doctrine.  Nor are the dates, methods and

---

[17] Exhibit G to Hawkins Decl. is a true and accurate copy of Hansberry's July 26, 2016 response.

subject matters of those communications.  Please provide *that* information at your earliest convenience.[18]

Hansberry responded immediately with complete defiance:

*I will not be providing any additional information.*[19]

This **red flag** could not be more apparent.

### C.   Mr. Shaw's Refusal to Answer Questions About His *In Judicio* Statements and Tiversa's Refusal to Provide a Declaration Create Adverse Inferences that Kline Represented Tiversa and Participated in this Case.

With great suspicion that Hansberry was refusing to disclose evidence of the fact that Kline was, in truth, *actively participating* in this litigation and *increased* suspicion about Mr. Shaw's conflicting representations, LabMD turned to Mr. Shaw for information about *his* representations to both courts.   To that end, LabMD's counsel sent the following email to Mr. Shaw on August 17, 2016:

Jarrod - we have a few questions about (1) representations you made to Judge Fischer in Pittsburgh in 2014 and the Court in Atlanta earlier this year and (2) Tiversa's position on an affidavit from Mr. Klein regarding his participation in the case in Atlanta.

First, regarding your following statements to Judge Fischer (see ECF No. 33-5 in the case before Judge May):

THE COURT: We'll come back to Jim Cook.  Who was involved

---

[18] (Emphasis added).  Exhibit H to Hawkins Decl. is a true and accurate copy of LabMD's July 26, 2016 email.

[19] (Emphasis added).  Exhibit I to Hawkins Decl. is a true and accurate copy of Hansberry's July 26, 2016 response.

previously for Pepper?

MR. SHAW: Eric Kline, Your Honor, and John Hansberry represented Tiversa in the action that was filed against Tiversa by LabMD in the Northern District of Georgia.

THE COURT: They were out of the Philly office?

MR. SHAW: John Hansberry, I believe, is out of the Pittsburgh office. Eric Kline is most certainly out of Pittsburgh office.

1. What was the specific basis for your statement that Eric Kline represented Tiversa in the case in Georgia?

2. If Eric Klein was not your source, who was and what was the specific basis for their information?

Second, regarding the italicized portion of the following statement in Tiversa's brief filed in the Georgia action on February 23, 2016 (See ECF No. 41, p. 47 in the case before Judge May):

LabMD's failure to provide *any* evidence of Mr. Kline's actual participation in this litigation – other than *a mistaken statement of a lawyer from another firm, made years after the conclusion of this case when that lawyer did not have any involvement in this litigation prior to 2016* – precludes any claim that Mr. Kline was an officer of this Court.

1. What was the specific basis for your statement to the Court in Georgia that your statement to Judge Fischer was a "mistaken statement"?

2. If Eric Klein was not your source, who was and what was the specific basis for their information?

Third, is Tiversa willing to prepare and file (or provide to me for filing) in the action before Judge May an affidavit or declaration from Eric Klein stating, unequivocally, that before October 6, 2013, he was not involved and did not participate in the action that was filed against Tiversa by LabMD in

the Northern District of Georgia?[20]

Please respond to these questions before the close of business on August 19, 2016.

Thank you for your cooperation.

Jim[21]

Mr. Shaw responded on August 17, 2016, with even more defiance and evasiveness than Hansberry:

Jim,

Please see the attached order from the Court regarding the Court's denial of LabMD's discovery request and the limitations of discovery the Court placed on LabMD. As you know, LabMD sought to take wide-ranging discovery [DE 34] which was denied. As you further know, the issues asked about below are specifically addressed in the attached order. As a result, we view this matter as closed.

Jarrod[22]

The fact that Mr. Shaw, an officer of the Court who owes a duty of candor to the Court, refused to give *any* explanation for his *in judicio* representations relied

---

[20] The question regarding Tiversa's willingness to submit an affidavit or declaration from Kline was largely prompted by a hypothetical the Court presented to Mr. Shaw at the April 22, 2016 hearing in this matter. Exhibit J to Hawkins Decl. is a true and accurate copy of the relevant portion of the April 22, 2016 hearing transcript.

[21] Exhibit K to Hawkins Decl. is a true and accurate copy of the August 17, 2016 email to Mr. Shaw.

[22] Exhibit L to Hawkins Decl. is a true and accurate copy of Mr. Shaw's August 17, 2016 email.

upon as true by two federal courts, is a major **red flag** on the issue of Kline's representation of Tiversa and participation in this case.[23]  Tiversa is hereby invited to file an affidavit or declaration from Mr. Shaw with answers to each of the questions LabMD asked Mr. Shaw on August 17, 2016.

The fact that Tiversa declined LabMD's invitation to bring the issue of Kline's involvement and participation in this case to a close with a simple affidavit or declaration from Kline is yet another major **red flag**.  Tiversa is hereby invited to file such an affidavit or declaration from Kline.

### D. Kline Is Boback's Long-Time Friend, Personal Lawyer and Business Partner in Numerous Real Estate Deals.

In yet another **red flag**, the evidence will show that Kline was not only intimately involved with the business and legal affairs of Tiversa as its outside general counsel for many years (while a partner at Morgan Lewis *and* later at Pepper Hamilton), but he has also been a long-time friend of, business partner with[24] and personal legal advisor to Boback and Boback's wife.

---

[23] There may be Rule 11 implications here, too.  *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997) ("Rule 11 emphasizes an attorney's continuing obligation to make inquiries, and thus the rule allows sanctions when an attorney continues insisting upon a position after it is no longer tenable.").

[24] Exhibit M to Hawkins Decl. is a printout from a September 6, 2016 search for real estate records in Butler County, Pennsylvania (www2.co.butler.pa.us/ recorder/).  This document and corresponding public records show that Boback and Kline (and sometimes their wives) jointly own, have owned or sold at least seven

The most sophisticated business executives rarely know the definition of "minimum contacts," much less the intricate factual analyses courts undertake to determine whether or not personal jurisdictions exists over their companies.  In other words, Boback must have learned from *someone* that, for Tiversa to avoid the jurisdiction of this Court, Boback had to lie about Tiversa's contacts with the State of Georgia.  LabMD fully expects the evidence to show that Kline told Boback what to say to avoid the Court's jurisdiction, knowing that Boback would need to lie to succeed.  Kline, Hansberry, Tiversa and Boback cannot shield their attorney-client or work product protected communications on this topic because, as discussed below, the crime-fraud exception pierces those protections.

### E.   Tiversa Hid from the FTC *and* Congress Kline's Involvement in the Underlying Scheme.

#### 1.   The Federal Trade Commission.

On September 30, 2013, the FTC issued a *subpoena ad testificandum deposition* and *subpoena duces tecum* to Tiversa in the Enforcement Action.[25] Tiversa was compelled to produce documents reflecting "All Communications between the Company and LabMD" and to produce a witness to testify about

---

(7) real estate interests spanning **December 6, 2007** through **March 31, 2016**. Some or all of these transactions may have violated Rule 1.8 (Conflict of Interest) of the Pennsylvania Rules of Professional Conduct.

[25] Dkt. No. [33-9].

"Tiversa's Communications with LabMD, including proposed contracts for services."[26]   The written communications Tiversa produced to the FTC are in a collection attached hereto.[27]   *Absent* from this collection is a July 23, 2008 email from Boback to LabMD revealing Kline's early involvement in the underlying scheme.[28]   Kline (who was then a partner at Morgan Lewis) directly participated in Tiversa's early threats to LabMD, which occurred right on the heels of Tiversa's theft of the 1718 File from LabMD.  This **red flag** is further evidence that Tiversa is evading questions and intentionally refusing to produce documents showing Kline's deep involvement in *all* matters involving the parties.

Another **red flag** is an outright lie Kline told the FTC on August 26, 2013, when he represented that The Privacy Institute "was not controlled by" Tiversa.[29] It is undisputed that Tiversa created, controlled and dissolved the Privacy Institute, all due to Kline's role as counsel to Tiversa.[30]

---

[26] Dkt. No. [33-9] at p. 21.
[27] Exhibit N to Hawkins Decl. is a collection of true and accurate copies of Tiversa/LabMD communications produced by Tiversa to the FTC.
[28] Dkt. No. [45-3].
[29] Dkt. No. [33-8].
[30] Dkt. No. [33-1] at 3-4, 17-20, 22, 30-34, 45-47 and 54 (and sources cited therein).

### 2. Congress.

Tiversa failed to disclose Kline's participation in the underlying scheme to Congress as well. In one example, Congress raised a **red flag** in the following footnote on p. 57 of the OGR Report:[31]

> [178]E-mail from Robert Boback to Todd Davis, CEO of LifeLock and Eric Kline (Mar. 9, 2009 8:59 a.m.) [LLOCKOGR-000147]. **Tiversa failed to produce this email to the Committee. [**"LLOCK" refers to third party LifeLock.]

### F. Mr. Shaw's Potential Implication in the DoJ's Investigation Seriously Impacts his Credibility.

On August 25, 2016, Boback's criminal defense attorney confirmed in a hearing in the State Defamation Action in Pittsburgh that the Department of Justice (Washington, D.C.) is investigating statements Boback made to the federal government over the last several years, including statements Boback made to Congress and the Federal Trade Commission.[32]

Mr. Shaw was right by Boback's side during the time most of those statements were made and cannot deny that he may be implicated in the DoJ's investigation, if not the inevitable prosecution. Mr. Shaw is highly motivated to prevent any disclosures of his client's crimes and *his* potential involvement

---

[31] *See* Dkt. No. [33-3] at 58.
[32] Exhibit O to Hawkins Decl. is a true and accurate copy of relevant portions of the August 25, 2016 hearing transcript.

therewith.[33]  It is also possible that Mr. Shaw has *no* evidence or basis to support his self-contradictory statement made to this Court.  This would explain why he avoided answering *any* questions about that representation.  In any event, this is another **red flag**.

### G.   For Many of the Same Reasons Asserted Here, A Special Master Will Eventually Be Needed in a Recently Filed Related Case Assigned to Your Honor.

In a case recently filed by LabMD and Mr. Daugherty against Tiversa *et al.* (referred to herein as *Georgia II*), also centered on Tiversa's crimes and lies regarding its theft of the 1718 File,[34] Tiversa recently moved the Court to allow it to file a brief in excess of page limits on its upcoming motions to dismiss.  Tiversa said the following in *Georgia II* regarding the grounds for those motions:

> Additionally, Tiversa believes that the Complaint should be dismissed for lack of *personal jurisdiction* [footnote omitted] pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and because it fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). As such, *Tiversa will also be filing a Motion to Dismiss on those grounds.*[35]

---

[33] It is certainly possible that Mr. Shaw has *no* evidence or basis to support his self-contradictory statement made to this Court.  This would explain why he avoids answering *any* questions about his statement to the Court.

[34] *Georgia II* includes claims under federal and Georgia RICO, common law fraud and other causes of action for damages due to Tiversa and its counsels' frauds on the Court in *this* case, among other harms.

[35] Dkt. No. [41] at 3 in *Georgia II* (emphasis added).

Will Tiversa rely upon the same fraudulent declaration this Court has already deemed to contain "*some evidence* of possible fraud"?[36] Time will tell. The relevant point, though, is that because Tiversa has chosen to keep its personal jurisdiction defense alive in both cases, a Special Master will be needed in *Georgia II* for many of the same reasons a Special Master is needed here.[37]

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   All Red Flags Point to the Same Conclusion: Kline Represented Tiversa and Actively Participated in *This* Litigation.

The Court is permitted to draw adverse inferences from Hansberry and Mr. Shaw's refusals to answer questions that would reveal the true role of Eric Kline in this litigation.  *Dir. of Office of Thrift Supervision, US Dep't of Treasury v. Lopez*, 960 F.2d 958, 965 (11th Cir. 1992) ("an adverse inference may be drawn from Ramon Lopez's refusal to answer questions about his relationship with General Bank").  Based on the evidence submitted with this motion, the Court can and should (for purposes of this motion), draw the following adverse inferences:

---

[36] Dkt. No. [49] at 15 in *Georgia I* (this case) (emphasis in original).

[37] At the appropriate time, LabMD and Mr. Daugherty will ask the Court in *Georgia II* for permission to take discovery on issues relating to personal jurisdiction.  Because Tiversa is keeping that defense alive in *this* case as well, LabMD respectfully requests the Court to permit discovery on that topic here.  In whichever case personal jurisdiction discovery is taken, the complexities of these cases and the history of litigation between these parties show that a Special Master will be needed to manage and supervise discovery.

- the identities of senders and recipients of internal documents in Hansberry's files reveal some level of participation in this litigation by Kline (based on Hansberry's refusal to answer);

- Kline was the sole basis for Mr. Shaw's initial representation to Judge Fischer in Pittsburgh (based on Mr. Shaw's refusal to answer); and either:

- Kline was the sole basis for Mr. Shaw's contradictory representation to this Court (based on Mr. Shaw's refusal to answer);[38] or

- Tiversa and Mr. Shaw have *no* basis for Mr. Shaw's self-contradictory statement (based on Mr. Shaw's refusal to answer).

**B.      There Are Compelling Reasons to Appoint a Special Master.**

There are many reasons why the Court should appoint a Special Master here. Perhaps the most significant is the fact that much of the evidence of Tiversa and its counsels' frauds on this Court exists in documents and testimony for which Tiversa will undoubtedly claim are shielded by the attorney-client privilege and work product doctrine.  Those protections, however, are pierced by the crime-fraud exception.[39]

---

[38] Because Kline was not counsel of record in this case, his statements to Mr. Shaw are certainly not entitled to the deference and presumption of truth discussed by the court in *Burns v. Windsor Ins. Co., supra*.

[39] In addition to being fraudulent, Boback's false statements in his Declaration constitute federal and state crimes of perjury.  *See, e.g.,* 18 U.S.C. § 1621 and O.C.G.A. § 16-10-70.  Kline's participation in the preparation of those statements constitutes the state crime of subornation of perjury.  *See* O.C.G.A. § 16-10-72.

### 1. The Crime-Fraud Exception Pierces the Attorney-Client Privilege and the Work Product Doctrine.

It is hornbook law that neither the attorney-client privilege nor the work product doctrine applies when a client seeks the advice of counsel in order to continue an existing crime or fraud or to perpetrate a future crime or fraud. *United States v. Zolin*, 491 U.S. 554, 563, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989).[40] For many years, courts struggled with the difficult question of how a party proves the crime-fraud exception given the fact that proof of the crime or fraud is often found in material otherwise shielded by the attorney-client privilege and/or work product doctrine. That issue was squarely presented to the Court in *Zolin*:

> The specific question presented is whether the applicability of the crime-fraud exception must be established by "independent evidence" (*i.e.*, without reference to the content of the contested communications themselves), or, alternatively, whether the applicability of that exception can be resolved by an *in camera* inspection of the allegedly privileged material.

*Id.* 491 U.S. at 556. The Court resolved the issue by rejecting the independent evidence approach and holding that under appropriate circumstances, and at the behest of the party opposing the claim of privilege, the trial court may conduct an

---

[40] It is important to note at the outset of this discussion that application of the crime-fraud exception, unlike fraud on the court, does not require any complicity by counsel. The exception applies even where the attorney is completely innocent of any wrongdoing. *In re Grand Jury Proceedings*, 604 F.2d 798, 802 (3d Cir. 1979).

*in camera* review of the materials in question.  *Id*.  Among the "appropriate

circumstances," to be considered, the Court ruled as follows:

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. The district court is also free to defer its *in camera* review if it concludes that additional evidence in support of the crime-fraud exception may be available that is not allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings.

*Id.* 491 U.S. at 572.

The holding in *Zolin* was consistent with existing law in this Circuit.  In *In

re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223 (11th Cir. 1987), the court

set forth a two-part test to determine whether the crime/fraud exception applies:

> The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.  That showing must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception.  That is not to say, however, that motions in opposition to grand jury subpoenas should turn into mini-trials.  If courts always had to hear testimony and conflicting evidence on such matters, the rationale

21

behind the prima facie standard -- the promotion of speed and simplicity at the grand jury stage--would be lost.  Thus, a prima facie showing can be established by a good faith statement by the prosecutor as to what evidence is before the grand jury.  Furthermore, the district court's determination that the facts set forth by the government establish a prima facie showing of criminal or fraudulent conduct can be reversed only for an abuse of discretion.

The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong.  Courts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard.  Nonetheless, the different formulations share a common purpose -- identifying communications that should not be privileged because they were used to further a crime or a fraud. Furthermore, the determination whether the requested material is sufficiently related to the investigation must take into account that the government does not know precisely what the material will reveal or how useful it will be.

*Id*. at 1226-27 (citations and quotations omitted).  For the first prong, LabMD has already made its *prima facie* showing of fraud with independent evidence, as confirmed by this Court's finding that LabMD presented "*some evidence* of possible fraud."[41]  For the second prong, an *in camera* review of documents and other evidence alleged to be protected from disclosure by the attorney-client privilege and work product doctrine is needed to establish the relationship between those materials and the criminal and fraudulent activity at issue.  Without a Special Master, the process of (1) compelling Tiversa and its counsel to produce documents and provide testimony and (2) analyzing all of the relevant documents

---

[41] Dkt. No. [49] at 15.

and other evidence on an *in camera* basis, will be a lengthy, expensive and time consuming process for the parties and the Court.  As the Court well knows, Fed. R. Civ. P. 1 states that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  In litigation with Tiversa, nothing has been just, speedy or inexpensive.

> **2.    Special Masters are Well Suited for Determining Crime-Fraud Exceptions, Fraud on the Court and Personal Jurisdiction.**

There is precedent in this and other circuits for the appointment and utilization of Special Masters in determinations of the crime-fraud exception and fraud on the court.  *See, e.g., Gutter v. E.I. DuPont de Nemours*, 124 F. Supp. 2d 1291, 1297 (S.D. Fla. 2000); *Am. Ins. Co. v. Lucas*, 38 F. Supp. 896, 900 (W.D. Mo. 1940); *In re Muir*, 212 F. Supp. 495 (M.D. Pa. 1914) and *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 449 (Bankr. D. Vt. 1995).  There is also precedent in this and other circuits for the appointment and utilization of Special Masters in determinations of personal jurisdiction.  *See, e.g., Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383 (5th Cir. 1989) *Bagley v. Rowley*, 127 F.2d 139 (6th Cir. 1942); *Corporacion Salvadorena de Calzado, S.A. (Corsal, S.A.) v. Injection Footwear Corp.*, 533 F. Supp. 290 (S.D. Fla. 1982); and *In re Vitamins Antitrust*

*Litig.*, 120 F. Supp. 2d 45 (D.D.C. 2000); *S. Union Co. v. Sw. Gas Corp.*, 2001 U.S. Dist. LEXIS 24759 (D. Ariz. Mar. 21, 2001).

**3.    A Special Master is Needed to Coordinate Discovery on Tiversa's Personal Jurisdiction Defense.**

Discovery is needed on Tiversa's personal jurisdiction defense in *Georgia I* and *will* be needed in *Georgia II*.  In the interest of efficiency and judicial economy, LabMD submits that personal jurisdiction discovery in the two actions should be managed and coordinated.  A Special Master will be in the best position to fill that need.

## IV.    <u>CONCLUSION</u>

LabMD is certain that Tiversa will refuse LabMD's invitation to submit an affidavit or declaration from Kline stating, unequivocally, that before October 6, 2013, he was not involved and did not participate in *this* action.  LabMD is equally certain that Tiversa will refuse LabMD's invitation to file an affidavit or declaration from Mr. Shaw with answers to each of the questions LabMD asked on August 17, 2016.   Tiversa will not provide such evidence because to do so would be yet more fraud on this Court.

24

For each of the reasons set forth above, LabMD requests the specific relief set forth in the accompanying proposed Order.

Respectfully submitted,

Dated: September 6, 2016

_/s/ James W. Hawkins_
James W. Hawkins
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
11339 Musette Circle
Alpharetta, GA 30009
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

_Attorney for Plaintiff LabMD, Inc._

## CERTIFICATE OF COMPLIANCE AS TO FONT SIZE

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1C.  The foregoing was prepared on a computer using Times New Roman font (14 point).

*/s/ James W. Hawkins*
James W. Hawkins
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
11339 Musette Circle
Alpharetta, GA 30009
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*Attorney for Plaintiff LabMD, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LABMD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:11-cv-04044-LMM |
| TIVERSA, INC., TRUSTEES OF | ) | |
| DARTMOUTH COLLEGE, and M. | ) | |
| ERIC JOHNSON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to counsel for parties of record electronically by

CM/ECF.

*/s/ James W. Hawkins*
James W. Hawkins
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
11339 Musette Circle
Alpharetta, GA 30009
678-697-1278
jhawkins@jameswhawkinsllc.com
*Attorney for Plaintiff LabMD, Inc.*